UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JOHN C. TURNER,                        )
                                       )
        Plaintiff,                     )        Civil Action No. 08-391
                                       )
v.                                     )
                                       )        **MEMORANDUM OPINION**
MICHAEL J. ASTRUE,                     )           **AND ORDER**
Commissioner of Social Security,       )
                                       )
        Defendant.                     )

                        ***  ***  ***  ***

This case boils down to one issue: Has the plaintiff, John Turner, "incurred" attorney's

fees within the meaning of the Equal Access to Justice Act even though he is not yet contractually

obligated to pay his attorney? He has not. Therefore, Turner's motion for attorney's fees, R. 21,

is denied.

## BACKGROUND

On October 9, 2009, the Court reversed a finding by the Commissioner of Social Security

that the plaintiff, John Turner, was not disabled. R. 19. The Court remanded the matter under

sentence four of 42 U.S.C. § 405(g) and directed the ALJ to explain what weight, if any, he gave

to the opinion of Turner's treating physician. *Id.* at 3-4. Turner then filed a motion for attorney's

fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). R. 21. That Act provides that

"a court shall award to a prevailing party . . . fees and other expenses . . . *incurred by that party*

in any civil action . . . including proceedings for judicial review of agency action, brought by or

against the United States . . . unless the court finds that the position of the United States was

substantially justified under the circumstances[.]" 28 U.S.C. § 2412(d)(1)(A) (emphasis added). The motion included an addendum dated December 2, 2008, which purported to assign Turner's right to fees under the EAJA to his attorney. R. 21, Ex. 3.

Initially, the Court granted Turner's motion. R. 26. Upon closer examination of the attached assignment, however, the Court noticed a reference to an "earlier contingency fee arrangement" between the plaintiff and counsel. R. 21, Ex. 3. Believing that the contingent nature of the fee agreement might affect Turner's eligibility for an EAJA award, the Court ordered Turner to file all fee agreements into the record. R. 27. The two agreements filed, one from 2006 and the other from 2008, both provided that "[n]o attorney fee will be charged if we do not win the case." R. 28, Exs. 1 & 2. The agreements also specified that the fee would be drawn from past-due benefits awarded. *Id.* Concerned that Turner had not actually "incurred" any fees under the contract because no benefits had been awarded, the Court ordered the parties to file briefs on the question of whether Turner had "incurred" fees within the meaning of the EAJA. R. 29.

## DISCUSSION

### I.     The Statutory Framework

How does a lawyer get paid? When the lawyer represents a Social Security claimant in federal court, the answer is tricky. Two different statutes—the Social Security Act and the Equal Access to Justice Act—have something to say about the issue. The problem is, the statutes do not speak with one voice. Far from it. The Court must delve into the resulting cacophony to resolve the complicated statutory question that this case presents.

The first statutory provision is § 406(b) of the Social Security Act. Under § 406(b), when a court renders a judgment favorable to a claimant, it may award the claimant's attorney a reasonable fee that does not exceed 25% of the past-due benefits awarded. 42 U.S.C. § 406(b)(1)(A). The fee is paid out of the claimant's past-due benefits. *Id.* Section 406(b) purports to establish the only way that an attorney can collect fees for successfully representing a Social Security claimant in federal court. The statute commands that "no other fee may be payable or certified for payment," *id.*, and makes it a crime for a lawyer to "charge[], demand[], receive[], or collect[]" any amount in excess of the fees "allowed by the court." *Id.* § 406(b)(2).

The second statute is the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The EAJA is not unique to Social Security; it affords litigants the opportunity to recover attorney's fees in *any* kind of litigation with the federal government. The statute provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." *Id.* § 2412(d)(1)(A). To receive an award of attorney's fees under the EAJA: (1) the claimant must be a "prevailing party," (2) he must "incur[]" attorney's fees, and (3) the government's position must not have been substantially justified. Although the EAJA requires that a litigant incur attorney's fees to be eligible for an award under the statute, the amount of the award is determined by an independent formula. The EAJA directs courts to award fees "based upon prevailing market rates for the kind and quality of the services furnished," typically capped at $125 per hour. *Id.* § 2412(d)(2)(A); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). It does not matter whether the claimant hires

John Doe at $125 per hour or Atticus Finch at $1,250 per hour—in most cases, the fee award under the EAJA will be the same.

By its terms, the EAJA applies to federal court actions in which a Social Security claimant challenges a denial of benefits. If the claimant prevails, incurs attorney's fees, and the agency's position was not substantially justified, the claimant may petition the court for an EAJA award. But not so fast. Section 406(b) of the Social Security Act purports to establish the *exclusive* method for paying an attorney who represents a Social Security claimant in federal court. And § 406(b)(2) makes it a *crime* for a lawyer to "charge[], demand[], receive[], or collect[]" any amount of fees "in excess of that allowed by the court" under § 406(b). On their faces, the EAJA and the Social Security Act seem incompatible. And for many years courts were confused about the interaction between the two statutes. *See Kopulos v. Barnhart*, 318 F. Supp. 2d 657, 662-64 (N.D. Ill. 2004). In response to the confusion, Congress amended the EAJA in 1985. The amendment included a so-called "Savings Provision," which states that § 406(b) of the Social Security Act "shall not prevent an award of fees" under the EAJA. Pub. L. No. 99-80, § 3, 99 Stat. 183 (1985). The Savings Provision further provides that the Social Security Act's criminal prohibition on charging, demanding, receiving, or collecting fees in excess of those allowed under § 406(b) "shall not apply" to EAJA awards, provided that if the attorney receives fees under both § 406(b) and the EAJA he must refund the smaller amount to the claimant. *Id.* Under this scheme, the EAJA award "offsets an award under Section 406(b), so that the amount of the total past due benefits the claimant actually receives will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits." *Gisbrecht*, 535 U.S. at

796 (internal quotations omitted).

This is how the statutes work in practice: The Social Security Administration denies a claimant benefits. The claimant hires an attorney to challenge the denial in district court.[1] The claimant and the attorney sign a contingent-fee contract—the claimant is required to pay the attorney a fee only if he wins past-due benefits, and that fee may not exceed 25% of the past-due benefits awarded. The attorney presents the case. The district court can do one of three things: (1) affirm the agency's denial of benefits, (2) reverse the agency's decision and award benefits, or (3) remand to the agency for further proceedings.

In the first two cases, determining the attorney's fee is easy. If the court affirms, the claimant does not receive benefits. The attorney receives no fees under the Social Security Act, and the claimant receives no fees under the EAJA because he has not prevailed. If the court reverses and awards benefits, the attorney petitions for his fee under the Social Security Act and the claimant petitions for a fee award under the EAJA. The claimant is then entitled to the smaller of the two awards and the attorney is entitled to the larger.

The third case is more difficult. If the court remands to the agency for further proceedings, the court does not award benefits. The claimant does not owe his attorney anything under the fee agreement because the contingency that would trigger his obligation to pay—the award of past-due benefits—has not occurred. But here is the rub. The remand makes the claimant a "prevailing party" for purposes of the EAJA. *See Shalala v. Schaefer*, 509 U.S. 292,

---

[1]     It is common for claimants to have one attorney in the administrative process and a new attorney when and if they reach the federal court process.

301-02 (1993). Therefore, if the agency's position is not substantially justified, the claimant would be entitled to an EAJA award if he "incurred" any attorney's fees. Has he? By the terms of most contingent-fee contracts, including the contract in this case, the claimant has absolutely no legal obligation to pay his attorney anything at the time of the remand. That obligation will only spring into existence if and when the agency awards the claimant benefits on remand. This is precisely the puzzling statutory question that this case presents. At its simplest, the question is the following: Has a Social Security claimant who is represented by counsel on a contingent-fee basis "incurred" any attorney's fees when the district court remands his case to the agency without awarding benefits? After careful consideration, the Court concludes that the answer here is no. Therefore, Turner is not entitled to an award of attorney's fees under the EAJA.

## II.    Turner Has Not "Incurred" Fees Under the EAJA

Although the Commissioner agrees that Turner "incurred" fees under the EAJA, the Court has an obligation to decide for itself whether the parties have accurately interpreted the statute. They have not. The EAJA is a limited waiver of the federal government's sovereign immunity. *Ardestani v. INS*, 502 U.S. 129, 137 (1991). Individual executive officers or agencies cannot waive the protections of sovereign immunity or urge a broader reading of a statute that waives sovereign immunity than is permitted by the statute's text. *See United States v. Shaw*, 309 U.S. 495, 501 (1940). Construing the EAJA strictly, as the Court must, the statute does not authorize the Court to award Turner attorney's fees under the circumstances of this case.

## A. Strict Construction of the EAJA

Absent express statutory authorization, sovereign immunity prohibits courts from ordering the United States to pay attorney's fees. *See United States v. Bodcaw Co.*, 440 U.S. 202, 203 n.3 (1979). Because the EAJA is a limited waiver of this sovereign immunity, it must be strictly construed. *Ardestani*, 502 U.S. at 137; *Allen v. Sec'y of Health & Human Servs.*, 781 F.2d 92, 94 (6th Cir. 1986). That is hornbook law. But what, exactly, does it mean to strictly construe a statutory waiver of sovereign immunity? Two central principles inform the analysis: (1) the Court must construe the statute in favor of the sovereign, especially when it comes to the scope of the waiver, and (2) a waiver of sovereign immunity must be clear and unambiguous from the text of the statute; courts may not find a waiver by implication or in legislative history if the text is unclear.

First, and most fundamentally, to strictly construe a waiver of sovereign immunity is to construe it in the sovereign's favor, especially with respect to the scope of the waiver. *See Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986) ("In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver beyond what the language requires[.]") (internal citations omitted) (overruled on other grounds); *United States v. Certain Land Situated in the City of Detroit*, 361 F.3d 305, 307 (6th Cir. 2004) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign."). Any ambiguities must be construed "in favor of immunity." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (quoting *United States v. Williams*, 514 U.S. 527, 531 (1995)).

Second, a waiver of sovereign immunity must be clear and unambiguous from the text of the statute. If the text is ambiguous, courts may not find a waiver by implication. *See Certain Land Situated in the City of Detroit*, 361 F.3d at 307 ("A waiver of sovereign immunity must be unequivocally expressed in the statutory text . . . and will not be implied.") (quoting *Lane*, 518 U.S. at 192). If the statute imposes limitations or conditions on the government's consent to suit, those limitations and conditions must be strictly, and literally, observed. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) ("Waivers of immunity must . . . not [be] enlarged beyond what the language requires[.]") (internal citations omitted); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."). Relatedly, courts may not find a waiver of sovereign immunity in legislative history where the text of the statute is not sufficiently definite and clear. *See Lane*, 518 U.S. at 192 ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text.") (internal quotation marks and citations omitted).

These strictures make sense. Waiving the government's sovereign immunity puts public tax dollars on the hook. Indeed, the most plausible textual source of the federal government's sovereign immunity is the Appropriations Clause of the Constitution. *See* John F. Manning, *Clear Statement Rules and the Constitution*, 110 COLUM. L. REV. 399, 437 n.192 (2010). That clause provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, § 9, cl. 7. The Appropriations Clause and

federal sovereign immunity require that Congress—the people's representatives—affirmatively consent before the federal treasury—the people's money—may face the expense of legal liability. *See id.* For this reason, individual executive officers cannot waive the protections of sovereign immunity or urge a broader reading of a statute that waives sovereign immunity than is permitted by the statute's text. *See Shaw*, 309 U.S. at 501. That is because sovereign immunity does not belong to any one executive officer or any one agency. Sovereign immunity is a privilege that belongs to the United States as a whole and, derivatively, to the people.

All of this is not to say that usual principles of statutory construction go out the window. As the Supreme Court has emphasized, the canon of strict construction is just that—a canon of construction. *See Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2019 (2008). It does not displace traditional methods of interpreting statutes. *Id.* If a statute clearly waives sovereign immunity, the Court must apply that waiver faithfully. But the import of the rule of strict construction is that, to waive the government's sovereign immunity, the statute must be clear and unequivocal.

With these general principles in mind, the Court turns to the specific question presented in this case: Did Turner "incur" attorney's fees under the terms of the EAJA when the district court remanded his case to the agency, even though he has no legal obligation to pay any fees at all to his attorney? Stated differently, under the facts of this case, does the EAJA clearly and unambiguously waive the government's sovereign immunity and entitle Turner to an award of attorney's fees?

### B.    The Texas Decision

The United States District Court for the Northern District of Texas recently decided a case presenting this precise question.  In *Murkeldove v. Astrue*, 635 F. Supp. 2d 564 (N.D. Tex. 2009), the court held that Social Security claimants in Turner's shoes are not entitled to an award of attorney's fees under the EAJA.  *Id.* at 585-86.  Like Turner, the claimant in *Murkeldove* was party to a contract obligating him to pay attorney's fees only if he won past-due benefits.  Applying the rule of strict construction, the court held that a claimant "incur[s]" attorney's fees, as that term is used in the EAJA, when he has either paid them or has a "legal obligation to pay them."  *Id.* at 573 (citing *SEC v. Comserv Corp.*, 908 F.2d 1407, 1414 (8th Cir. 1990)).  Because "the contingency that would cause [the claimant] to have a fee payment obligation did not occur," *id.*, under the terms of the contract, the claimant did not owe his attorney a dime.  Therefore, the court concluded that he had not "incurred" any fees, and was not entitled to an EAJA award.  *Id* at 585-86.

The Texas court acknowledged that its commonsense interpretation of the EAJA flew in the face of longstanding practice by both the Commissioner of Social Security and courts around the country.  At the urging of the Commissioner, many courts, including the same Texas court that decided *Murkeldove*, had consistently awarded attorney's fees under the EAJA to Social Security claimants and their attorneys for simple remands.  But, for the Texas court, years of erroneous interpretation and application of the EAJA did not change the statute's plain meaning.  The Texas court concluded that it had been exceeding its authority under the EAJA.  The *Murkeldove* decision put an end to it.

The Court agrees with the result reached in *Murkeldove* and with much of the Texas court's reasoning. The EAJA, as currently written, does not authorize federal courts to award attorney's fees to claimants who secure a remand but no past-due benefits, and as a result do not owe their attorneys anything. Years of erroneous practice to the contrary do not excuse this Court from performing its core function—faithfully interpreting and applying the law. And a faithful interpretation of the EAJA compels the conclusion that Social Security claimants like Turner are not entitled to an award of attorney's fees under that statute.

**C.      Fees Cannot Be "Incurred" if the Contingency that Obligates a Claimant to Pay has not Occurred**

The Court's interpretation of the EAJA must begin with the language of the statute. *See United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000). And, in this case, it must also end there. The Sixth Circuit has recognized that statutory text should "be the ending point [of statutory interpretation] if the plain meaning of that language is clear." *Id.* While it is true that the plain language of the EAJA may be subject to interpretation, Turner asks the Court to conclude that the government has waived its sovereign immunity. The Court can only find in Turner's favor if the text of the EAJA clearly and unambiguously entitles him to an award of attorney's fees. The Court will not—indeed it cannot—mine the annals of legislative history or other non-textual sources in search of a waiver by implication. *See Lane*, 518 U.S. at 192 ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text.") (internal quotation marks and citations omitted). Unfortunately for

Turner, the EAJA does not speak to his situation with the clarity required to find a waiver of the government's sovereign immunity.

To be sure, there are situations in which the EAJA clearly waives the government's sovereign immunity and directs courts to award attorney's fees. If a litigant prevails against the United States, has incurred attorney's fees, and the government's position was not substantially justified, he is entitled to an EAJA award upon a timely application. 28 U.S.C. § 2412(d)(1)(A)-(B). A typical case is *Caremore, Inc. v. NLRB*, 150 F.3d 628 (6th Cir. 1998). In *Caremore*, the Sixth Circuit had previously vacated a decision of the National Labor Relations Board ("NLRB") that clearly flouted established circuit precedent. *Id.* at 629-30. The court held that Caremore was a prevailing party and the government's position in the litigation was not substantially justified. Therefore, Caremore was entitled to "recover" the attorney's fees that it had incurred, subject to the EAJA's statutory maximum. *Id* at 630. Caremore requested reimbursement of all of its attorney's fees, which it had paid at $150 per hour, but the court limited the fee award to the EAJA's statutory cap of $125 per hour. *Id.* at 630-31. *Caremore* demonstrates exactly how the EAJA is supposed to work. Caremore paid its attorneys $150 per hour to challenge the NLRB's position in federal court. Caremore prevailed, and the court found that the NLRB's position was not substantially justified. Therefore, under the terms of the EAJA, Caremore was entitled to have the government refund its attorney's fees, up to $125 per hour.

What makes *Caremore* a typical case, clearly falling within the EAJA's wavier of sovereign immunity, is that the company *actually paid* attorney's fees. There can be no doubt that a party incurs attorney's fees when he actually hands his attorney a check. An express or implied

agreement, *i.e.* a legal obligation, to pay an attorney a fee will also suffice. *See King v. Comm'r of Soc. Sec.*, 230 F. App'x 476, 481 (6th Cir. 2007) ("To be 'incurred' within the meaning of a fee shifting statute, *there must also be an express or implied agreement that the fee award will be paid over to the legal representative.*") (quoting *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991)); *Comserv Corp.*, 908 F.2d at 1414 ("[F]ees are incurred when there is a legal obligation to pay them."). But has a claimant "incurred" attorney's fees when he has neither paid his attorney directly nor assumed any legal obligation to pay his attorney? Has a claimant incurred a fee if, because the contingency in the fee agreement has not occurred, the claimant does not yet owe his attorney a dime? By any reasonable understanding of the term "incurred," the answer must be no.

Several different circuit courts across the country have recognized this commonsense interpretation of the "incurred" requirement as it is used in the EAJA and similar fee-shifting statutes. In *United States v. Claro*, 579 F.3d 452, 464-68 (5th Cir. 2009), the Fifth Circuit held that a claimant had not "incurred" fees for paralegal work performed by his wife, whom he had no legal obligation to pay. In *United States v. 122.00 Acres of Land*, 856 F.2d 56, 58 (8th Cir. 1988), the Eighth Circuit held that a claimant had not "actually incurred" attorney's fees where the event that would trigger his contingent liability to pay—recovering compensation from the government for condemned land—did not occur. In rejecting a contrary interpretation of the fee agreement involved in that case, the court noted that "where the construction of a private contract implicates the federal treasury, . . . the contract should be construed as plainly written." *Id.* And in *United States v. Paisley*, 957 F.2d 1161, 1164 (4th Cir. 1992), the Fourth Circuit held that a

-13-

claimant had not "incurred" attorney's fees where he had a right to full indemnification of those fees by a solvent third party. The holdings in *Claro*, *122.00 Acres of Land*, and *Paisley* accord with the most commonsense interpretation of the term "incurred." If the claimant has not paid any attorney's fees, and is under no obligation to pay any attorney's fees, he has not "incurred" any attorney's fees.

Some other courts, however, have taken a more liberal view of the "incurred" requirement in the EAJA. Emphasizing the EAJA's broad statutory purpose—to "diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action," *Cornella v. Schweiker*, 728 F.2d 978, 981 (8th Cir. 1984) (internal citation omitted)—these courts have interpreted the EAJA to authorize an award of fees where the claimant has no legal obligation whatsoever to pay any fees to his attorney.

For example, in *Cornella*, the court awarded attorney's fees under the EAJA even though the claimant had pro bono representation and did not owe her attorney any fees at all. *Id.* at 987. This Court is not bound by the *Cornella* decision. And that is good news, because the court's analysis in that case was faulty. The court invoked the EAJA's legislative history, citing a House Report that states: "[T]he computation of attorney fees should be based on prevailing market rates *without reference to the fee arrangements between the attorney and client*. The fact that attorneys may be providing services at . . . hourly rates below the standard commercial rates . . . is not relevant to the computation of compensation under the Act." *Id.* at 986. From this House Report the court reasoned: "Once the actual fee arrangements between the attorney and the client are excluded from computation of the award, there is no logical distinction which can be drawn

-14-

between cases in which fees have been incurred and those in which they have not." *Id.* Did you catch what just happened there? The court used the statutory purpose and the legislative history of the EAJA to eviscerate the statute's text. The statute clearly requires that a claimant incur attorney's fees to be eligible for an EAJA award. But the court in *Cornella* read "incur" completely out of the statute. This mode of reasoning is problematic in any case, but it is especially wrongheaded when a court construes a statutory waiver of sovereign immunity.

Statutory waivers of sovereign immunity must be clear and unequivocal. The Court can not search for a waiver in legislative history or imply a waiver from some un-enacted statutory purpose. For example, in *United States v. Ranger Electronic Communications*, 210 F.3d 627 (6th Cir. 2000), the Sixth Circuit reversed an award of attorney's fees under the Hyde Amendment, which specifically incorporates the EAJA's procedural requirements. *Id.* at 630-31. Although the claimant filed his application more than 30 days after the final judgment—an untimely application under the terms of the EAJA—the district court still awarded attorney's fees, reasoning that because the government had concealed its *Brady* violation, permitting the claimant "a further reasonable time period" to file an application for fees was required "to give effect to Congress's purpose . . . in awarding attorneys' fees in criminal cases involving 'bad faith.'" *Id.* at 633. The Sixth Circuit disagreed. Construing the statute strictly, the court faithfully applied the EAJA's 30-day requirement and denied the claimant's application for fees. *Id.* at 633-34. What *Ranger Electronic* understood, and what *Cornella* did not, is that whatever the purpose or the legislative history of the EAJA may be, it is simply impermissible for a court to rely on that purpose or history in a way that eviscerates a clear textual requirement. Because the reasoning

employed in *Cornella* and similar cases eviscerates the requirement that a claimant "incur" attorney's fees, this Court must reach the opposite result.

Additionally, the design and structure of the EAJA confirm that a Social Security claimant who is under no legal obligation to pay his attorney has not incurred any fees. EAJA awards are paid directly to litigants, *not* to their attorneys. *See Astrue v. Ratliff*, 130 S. Ct. 2521, 2524 (2010) ("We hold that a[n EAJA fee award] is payable to the litigant[.]"); *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 448 (6th Cir. 2009) ("[W]e are persuaded by the plain language of the EAJA and conclude that the prevailing party, and not her attorney, is the proper recipient of attorney fees under the EAJA."). EAJA awards go to litigants rather than attorneys because the EAJA operates on a reimbursement model. For example, the section of the EAJA under which litigants can recover their litigation costs other than attorney's fees requires that the statutory award "be limited to *reimbursing* in whole or in part the prevailing party for the costs incurred by such party in the litigation." 28 U.S.C. § 2412(a)(1) (emphasis added). Courts awarding attorney's fees under the EAJA have also recognized that awards under the statute are meant to be reimbursements. *See, e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 965 (D.C. Cir. 2004) ("Having secured the relief it sought, [plaintiff] now requests, pursuant to the [EAJA], *reimbursement* for the attorneys' fees that it incurred in bringing the appeal.") (emphasis added). Because the EAJA operates on a reimbursement model and awards under the statute go directly to the litigant, the focus in determining whether a Social Security claimant has "incurred" attorney's fees must be on the claimant himself—his out-of-pocket expenses or his legal obligation to pay. *See Bryant*, 578 F.3d at 448 ("[T]he . . . 'prevailing party' language [in the

EAJA] should 'leave no doubt' that Congress intended that EAJA awards be considered from 'the perspective of the litigant' and not from that of her attorney.") (quoting *Richlin Sec. Serv.*, 128 S. Ct. at 2013).

Further, comparing the EAJA to other fee-shifting statutes confirms the Court's interpretation. Congress has enacted more than 100 different fee-shifting statutes. *See Marek v. Chesny*, 473 U.S. 1, 43-51 (1985) (Brennan, J., dissenting) (listing statutes). They generally fall into two rough categories. The first category awards attorney's fees to a litigant who "incurs" or "actually incurs" fees. This category includes the EAJA, the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654 ("The Federal court . . . shall award the [property] owner . . . reasonable attorney . . . fees, actually incurred[.]"), and the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)(i) ("The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred[.]").[2] The second category

---

[2]     It would be possible to read meaning into the distinction between statutes that shift fees that are "*actually* incurred," like 42 U.S.C. § 4654, and statutes that shift fees that are just "incurred," like the EAJA. The Eighth Circuit did not find this difference in statutory language meaningful. *See Comserv*, 908 F.2d at 1414 n.9 ("We do not find the difference in statutory language . . . that is, the inclusion of the word 'actually' modifying 'incur,' to be significant."). Moreover, it is questionable that a court should read much significance in this change of text. *Cf. Wachovia Bank v. Schmidt*, 546 U.S. 303, 319 (2006) ("'The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against.'") (quoting Walter Wheeler Cook, *"Substance" and "Procedure" in the Conflict of Laws*, 42 Yale L.J. 333, 337 (1933)). For the purposes of this case, however, the Court need not decide whether this difference is material. What is much more significant is the stark distinction between statutes that require fees to be "incurred" or "actually incurred" and those that have no "incur" requirement at all.

simply awards "reasonable attorney's fees" without any requirement that a litigant incur those fees. The fee-shifting provision of the civil rights statute, 42 U.S.C. § 1988(b), is one example. That section provides that, in an action to enforce one of several different civil rights statutes, including § 1983 and Title VI of the Civil Rights Act, a "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." *Id.*

Clearly, Congress knows how to write a statute that provides an award of attorney's fees regardless of whether the litigant actually pays, or has a legal obligation to pay, those fees out-of-pocket. *See Marre v. United States*, 38 F.3d 823, 828-29 (5th Cir. 1994) (contrasting the two categories of fee-shifting statutes). The EAJA is plainly not such a statute. Especially when considered next to statutes that simply provide for a "reasonable" attorney's fee, the "incurred" requirement in the EAJA has to mean something. And what it means is what it says. *See Stephens v. Astrue*, 565 F.3d 131, 139-40 (4th Cir. 2009) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). To be eligible for an EAJA award, a litigant must *incur* attorney's fees—he must pay them out-of-pocket or have a legal obligation to pay them.

There are, admittedly, reasonable arguments to the contrary. Maybe the EAJA contemplates a fee award even if the literal terms of the contingent fee agreement do not legally obligate a Social Security claimant to pay his attorney anything upon a remand. After all, the EAJA does not tie the amount of the statutory award to the amount specified in the original fee agreement. Instead, the EAJA directs the court to award fees based on "prevailing market rates," not to exceed $125 per hour in most cases. 28 U.S.C. § 2412(d)(2)(A). So, if the EAJA directs

the court to ignore the actual amount charged in the fee contract, the court should ignore the contingency provision as well, right?

Wrong. The EAJA's structure is very clear. If a litigant incurs attorney's fees, the government may have to reimburse him for those attorney's fees. But Congress did not want the government to be on the hook for an outrageous amount if the claimant decides to hire Perry Mason or Clarence Darrow at $1,000 per hour. Therefore, the Act ties the amount of the fee award to prevailing market rates and imposes a cap. But that is what virtually *all* fee-shifting statutes do. *See Gisbrecht*, 535 U.S. at 807 n.16 ("[The] EAJA . . . authorizes fee shifting . . . and, correspondingly, places a specific dollar limit on the hourly rate that ordinarily can be charged to the losing party."). Substituting the market rate for the actual amount of attorney's fees incurred does not, however, provide any justification for eliminating the requirement that the litigant incur fees in the first place. It is still relevant, indeed dispositive, whether the contingency clause of the fee agreement has been triggered. In fact, several courts have held that the amount of the contractual contingent fee caps any recovery under the EAJA, even if the statutory calculation based on prevailing market rates would produce a greater fee award. The rationale is that a litigant only "incurs" attorney's fees up to the amount that the contract obligates him to pay. *See Claro*, 579 F.3d at 461; *United States v. Adkinson*, 256 F. Supp. 2d 1297, 1317 (N.D. Fla. 2003); *Marre*, 38 F.3d at 828. *But see Kopulos*, 318 F. Supp. 2d at 664; *Watford v. Heckler*, 765 F.2d 1562, 1567-68 (11th Cir. 1985). Under this line of reasoning, the court would award the lesser of the amount in the contingency fee agreement or the amount calculated using prevailing market rates. But the Court need not decide today whether the amount in Turner's

contingency contract would cap his award under the EAJA. Because the contingency that would obligate Turner to pay fees to his attorney has not occurred, he is under no legal obligation to pay his attorney anything. As such, he has not "incurred" attorney's fees, and the EAJA's market rate calculation has no room to operate.

## D.    The Savings Provision Does Not Compel a Different Result

The so-called "Savings Provision" does not save Turner's argument. That uncodified amendment to the EAJA provides that § 406(b)(1) of the Social Security Act "shall not prevent an award of fees" under the EAJA.[3] Pub. L. No. 99-80, § 3, 99 Stat. 183 (1985). The Savings Provision further provides that § 406(b)(2), which makes it a crime for an attorney to charge, demand, receive, or collect any fee in excess of the contingency fee allowed by the court under § 406(b)(1), "shall not apply with respect to any" award under the EAJA, so long as an attorney who receives fees under both the EAJA and § 406(b) refunds the smaller amount to the claimant. *Id.*

The Savings Provision was intended to be a band aid. Its purpose was to fix the disconnect between the EAJA and § 406(b). As the Fifth Circuit recounted in a recent case,

---

[3]    The Texas Court in *Murkeldove* seemed to attach significance to the fact that the Savings Provision is not codified. 635 F. Supp. 2d at 579-80 ("[A]n uncodified amendment to the EAJA enacted by Congress in 1985 . . . . cannot be used to change the clear language of the 1980 enactment of the EAJA."). The Court disagrees with the implication that the Savings Provision has any less legal effect because it is was never codified. Congress regularly passes laws that are not placed in the United States Code for any number of reasons, including incompatible formats. *See* Will Tress, *Lost Laws: What We Can't Find in the United States Code*, 40 GOLDEN GATE U. L. REV. 129, 139-43 (2010). But the Savings Provision passed the House and Senate and was signed by the President. Therefore, it is law. *See* U.S. CONST. art. I, § 7; *INS. v. Chadha*, 462 U.S. 919, 945-46 (1983).

"[t]wenty-five years ago, social security attorneys looking to collect both a court-ordered contingency fee and an EAJA award in the same case found themselves in a pickle." *Rice v. Astrue*, 609 F.3d 831, 835 (5th Cir. 2010). That is because, "when a court grants contingency fees under § 406(b) for a successful judicial challenge, it is a crime for an attorney to 'charge[], demand[], receive[], or collect[] . . . any amount in excess of that allowed by the court." *Id.* at 835-36. By its plain terms, § 406(b) forbade "attorneys from seeking to collect fees awarded under the EAJA." *Id.* at 836. With the Savings Provision, "Congress endeavored to harmonize the two types of fees . . . ." *Id.* The Savings Provision lifts § 406(b)(2)'s criminal prohibition on demanding or collecting fees in excess of the amount approved by the court under the contingency contract and allows an attorney to also seek an EAJA award. Before the enactment of the Savings Provision, if the court awarded an attorney a contingent fee under § 406(b) it was a crime for the attorney to also demand or collect an EAJA award. The Savings Provision fixed that. Now, an attorney can collect an EAJA award even though the court has already awarded him fees under the contingency contract. And to prevent a double recovery by the attorney, the Savings Provision requires the attorney to refund the smaller award to the claimant. *See Murkeldove*, 635 F. Supp. 2d at 580 ("The most sensible reading of the Savings Provision is that it instructs that the fact that a Social Security claimant becomes obligated to pay his attorney under the authority of § 406(b) fees out of Social Security benefits in a civil action does not prevent the claimant, as the prevailing party in the civil action, from applying for, and receiving,

compensation for those payments under [the EAJA].").[4]

It may be possible to twist the Savings Provision to support Turner's position that he is entitled to an EAJA award even though he does not currently owe his attorney anything. The argument would go like this: Section 406(b) limits what attorneys can charge Social Security claimants for representing them in federal court. The fee agreement must be contingent, and it cannot exceed 25% of the past-due benefits awarded. But the Savings Provision says that § 406(b) "shall not prevent" an EAJA award, and that the criminal prohibition on charging or demanding any amount in excess of the amount awarded by the court under the contingency fee agreement "shall not apply" to an EAJA award. So, one could argue that the Savings Provision, by waiving § 406(b)'s requirement that the fee be contingent, specifically authorizes an EAJA award even if the contingency in the fee agreement has not yet come to pass. This is one possible way to read the Savings Provision. But it is not the most straightforward way.

The better interpretation is that the Savings Provision simply has nothing to say about Turner's situation. The text of the Savings Provision makes plain that it only applies when a court has *already* awarded attorney's fees under § 406(b)(1). Section 406(b)(1) states that, once a court awards a contingency fee out of the claimant's past-due benefits, "no other fee" may be paid. The Savings Provision waives that prohibition and says that § 406(b)(1) "shall not prevent an award of fees under" the EAJA. Once a court awards a contingency fee under § 406(b)(1),

---

[4]     There is some logic in this. After all, outright reversal is a rare remedy in the district court. If a claimant secures such a reward then an egregious mistake was usually made below. By allowing the claimant to keep more, this error is arguably remedied more fully.

§ 406(b)(2) kicks in and makes it a crime for an attorney to charge, demand, receive, or collect any amount "in excess of that allowed by the court" under § 406(b)(1).  The Savings Provision says that this criminal prohibition "shall not apply" to an EAJA award as long as the attorney refunds either the EAJA award or the contingency fee to the claimant, whichever is smaller.  But the criminal prohibition only applies if the court has already awarded contingency fees—if the attorney collects or demands fees "in excess of that *allowed by the court*."  42 U.S.C. § 406(b)(2).  The Savings Provision only waives the criminal prohibition that would otherwise prohibit an attorney from seeking an EAJA fee where the court has already awarded a contingency fee under § 406(b)(1).  But the Savings Provision did not change the EAJA's clear requirement that the litigant must "incur" attorney's fees.  And the claimant only incurs a fee if the court awards the attorney a contingency fee under § 406(b)(1).  The Savings Provision simply has nothing to say about Turner's predicament.  The court did not award Turner benefits and did not award his attorney a contingency fee under § 406(b)(1).  Therefore, Turner has not "incurred" any fees at all.  The Savings Provision—which only addresses the situation in which the court has already awarded an attorney's fee under § 406(b)(1)—does not throw him a life preserver.

Therefore, the best reading of the Savings Provision is that it simply opens the door to an award of EAJA fees where the court has already awarded attorney's fees under § 406(b).  The alternative argument—that by waiving the requirement that the fee agreement be contingent the Savings Provision somehow magically makes Turner "incur" a fee, thereby entitling him to an EAJA award—is simply too creative by half.  This is, after all, a waiver of sovereign immunity we are talking about.  And it must be strictly construed in favor of the sovereign.  At best, the

Savings Provision might be ambiguous. But ambiguities must be construed "in favor of immunity." *Lane*, 518 U.S. at 192. If Congress had intended to waive the EAJA's requirement that attorney's fees be "incurred" for Social Security claimants, it could have said so with infinitely clearer language. Therefore, because the Savings Provision does not clearly and unambiguously entitle Turner to an award of attorney's fees under the EAJA, his application must still be denied.

### E. Awarding Turner an EAJA Award Would Produce Absurd Results

The correctness of the Court's conclusion is even more clear considering the absurd consequences that the opposite result would produce. Recall that the government pays EAJA awards directly to the litigant, not to his attorney. *See Ratliff*, 130 S. Ct. at 2524; *Bryant*, 578 F.3d at 448. Suppose that the Court were to award Turner attorney's fees under the EAJA, even though he is under no legal obligation at this time to pay his attorney anything. The check would be made-out to Turner. Also suppose that, on remand, the Social Security Agency again denies Turner benefits. He still would be under no legal obligation to pay his attorney anything. Turner would pocket the EAJA award himself. The award would be a substantial, and substantially unjustified, windfall.

And this would not be just a quirky, isolated result. Potentially thousands of Social Security claimants would reap substantial windfalls at taxpayer expense. Remands, after all, are quite common. In 2005, district courts across the country remanded approximately 45% of the Social Security cases they heard to the agency. *See* SOCIAL SECURITY ADVISORY BOARD, DISABILITY DECISION MAKING: DATA AND MATERIALS at 91 (2006),

http://www.ssab.gov/documents/chartbook.pdf (hereinafter "DISABILITY DECISION MAKING").

That is more than 5,500 cases. And if the agency awards benefits in the same percentage of cases on remand as it allows at the initial hearing stage, the agency would award benefits only about 60% of the time. *See id.* at 24 (during 2004 fiscal year, agency awarded benefits in approximately 60% of cases at the hearing level). So, the agency would still deny benefits in approximately 40% of remanded cases. Under the terms of their contingency contracts, those claimants would owe nothing to their attorneys. *See Bryant*, 578 F.3d at 449 ("Awarding these fees to plaintiffs arguably makes it less certain that attorneys taking these cases will be paid. These are legitimate concerns worthy of Congressional consideration."); Turner's Rep. Br., R. 41 at 1-2 ("[T]he Commissioner's position, ironically, will place this and any legal counsel who successfully litigates a federal Social Security appeal in a financially far more precarious position of never getting paid for his successful legal efforts . . . .").

Thus, under the opposite result, more than 2,200 claimants per year would pocket EAJA awards even though they are not entitled to any Social Security benefits. Surely Congress did not intend such a result. *See King*, 230 F. App'x at 476 ("The [EAJA] does not contemplate that a fee award may be made to a party to be retained.") (quoting *Phillips*, 924 F.2d at 1583). This is precisely why the "incur" requirement demands that a claimant be under a *current*, not merely a contingent, legal obligation to pay fees to his attorney. Contingent liabilities, by definition, may never come to pass. If a mere contingent liability were enough to entitle a Social Security claimant to an EAJA award, the government would be providing windfalls to a large number of Social Security claimants at public expense. This "windfall at public expense" is "an intolerable

result considering the rule that waivers of sovereign immunity are to be narrowly construed." *Claro*, 579 F.3d at 461 (internal citations omitted).

Turner's purported assignment of his EAJA fees to his attorney does not remedy the situation. Under an agreement signed on December 2, 2008, Turner "freely and willingly assign[ed his] legal rights to any and all Equal Access to Justice Act attorney fees which the Court might award" to his attorney. R. 21, Ex. 3. This assignment of Turner's claim against the United States for attorney's fees is void because it runs afoul of the Anti-Assignment Act, 31 U.S.C. § 3727. That statute imposes stringent requirements on the assignment of claims against the United States including that 1) "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued;" 2) "[t]he assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses;" and 3) "[t]he person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment." *Id.* § 3727(b). As other courts have held, *see Hayes v. Astrue*, No. 06-05720, 2008 WL 648463, at *3-4 (N.D. Cal. March 5, 2008); *Vinning v. Astrue*, 668 F.Supp.2d 916, 929 (N.D. Tex. 2009), the Anti-Assignment Act applies to EAJA awards. And the Supreme Court has indicated that giving an attorney "any priority in the distribution of [ ] money received [by the client] from the United States" would be subject to the statute's requirements. *Nutt v. Knut*, 200 U.S. 12, 21 (1906).

Turner's assignment does not comply with Anti-Assignment Act, and therefore is void. Among other deficiencies, Turner made the assignment before his claim was allowed and two witnesses did not attest to it. Turner implicitly concedes this, R. 41 at 1, but he nonetheless

responds that enforcement of the Anti-Assignment Act will place Social Security attorneys in a "financially precarious" position which will undermine the objective of the EAJA and spawn litigation between attorneys and clients over fee awards. *Id.* at 1-2. Despite these concerns, the Court cannot ignore the plain language of the statute. *Cf. Bryant*, 578 F.3d at 445 (acknowledging adverse consequences of requiring EAJA payments directly to litigants but nonetheless enforcing plain language of the statute). Accordingly, Turner's assignment of his EAJA award to his attorney is void. Therefore, if the Court were to award Turner fees under the EAJA, he could keep them. And if the Commissioner still denies him benefits on remand, he would keep the EAJA fees forever. That cannot be the correct result.

## F. Practical Consequences

The Court is troubled by the effects of this decision and does not reach this decision lightly. The Court is well aware that its holding may upset the fairly widespread practice of awarding EAJA fees to Social Security claimants who only secure a remand from the district court. And the Court recognizes that its reasoning may severely limit the number of Social Security claimants who can recover EAJA awards. Practically, only the 5% of Social Security claimants who are actually awarded benefits by the federal court—approximately 618 claimants in 2005—will have "incurred" fees within the meaning of the EAJA. *See* DISABILITY DECISION MAKING at 91. Only they will be under a legal obligation to pay fees to their attorneys, and therefore only they will be entitled to an EAJA award if the Commissioner's position is not substantially justified.

Of course, many claimants who have their cases remanded to the agency will eventually

receive benefits and will then "incur" fees under the terms of their fee agreements. The problem is, the EAJA requires the claimant to file an application seeking an EAJA award within 30 days of the "final judgment" that makes him a "prevailing party." 28 U.S.C. § 2412(d)(1)(A)-(B). The court's judgment remanding the case to the agency under sentence four of 42 U.S.C. § 405(g) is such a judgment.[5]  *See Schaefer*, 509 U.S. at 300-01. The judgment becomes "final" when it is "not appealable." 28 U.S.C. § 2412(d)(2)(G). A civil case to which a federal officer is a party must be appealed within 60 days after entry of judgment. Fed. R. App. P. 4(a). Therefore, the court's judgment remanding the case to the agency becomes final 60 days after it is entered, at which point the 30-day EAJA clock starts ticking. *See Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578, 581 (6th Cir. 2005). Unless the Social Security Administration is able to conduct the rehearing and award the claimant benefits within that time period, the court likely will not be able to award any EAJA fees because the application will be considered untimely.

The Texas court, in a case decided shortly after *Murkeldove*, downplayed the practical consequences of this result. *Vinning*, 668 F. Supp. 2d at 930-31. That court concluded that denying EAJA fees to Social Security claimants who secure only a remand from the district court will not materially limit their ability to secure representation. The court noted that "there is an

---

[5]     As the Court explained in *Schaefer*, there is a difference between a remand under sentence four of § 405(g) and a remand under sentence six of that same section. A sentence-four remand "terminates the litigation with victory for the plaintiff," and therefore makes the claimant a "prevailing party." 509 U.S. at 301. Under a sentence-six remand, however, the Court continues to supervise the Commissioner's reconsideration of the claimant's case. 42 U.S.C. § 405(g). This Court remanded Turner's case pursuant to sentence four of § 405(g). Therefore, that judgment made Turner a "prevailing party."

abundance of available representation for Social Security claimants on a contingent fee basis" and therefore concluded that "reliance on the EAJA is not required for those claimants to obtain needed representation in the pursuit of Social Security claims." *Id.* at 930. The Texas court's reasoning may be overly optimistic. Indeed, it runs directly into a chicken-or-egg dilemma. The reason that there are so many lawyers willing to represent Social Security claimants in federal court is probably that the courts have been consistently awarding them EAJA fees without question. If the EAJA fees dry up, as a matter of basic economics, there will be fewer attorneys willing to represent Social Security claimants in federal court.

The Court recognizes this likely result and regrets it. But this practical effect cannot change the Court's obligation to interpret and apply the text of the EAJA faithfully. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("'Whatever temptations the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better.") (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 533 (1947)); *United States v. Goldenberg*, 168 U.S. 95, 103 (1897) ("No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute."). Indeed, when strictly construing a statutory waiver of sovereign immunity, the interpretation that results in the government facing the *least* liability is probably the most preferable. Waivers of sovereign immunity must be construed in favor of the government, especially when it comes to their scope. *Shaw*, 478 U.S. at 318. And any ambiguities must be construed in favor of immunity. *Lane*, 518 U.S. at 192. So, even if the EAJA is subject to two plausible interpretations—one that would authorize EAJA

awards for Social Security claimants who secure a reversal or a remand from the district court (approximately 50% of cases) and one that would authorize EAJA awards only for Social Security claimants who secure an outright reversal and receive benefits (approximately 5% cases)—the strict construction rule argues strongly in favor of the second interpretation. *See Certain Land Situated in the City of Detroit*, 361 F.3d at 307 ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign.") (internal quotation marks and citation omitted).

### G.    A Way Out

There is, thankfully, a way out of this mess. In fact, there are two ways. First, and most preferably, Congress can act. As currently written, the EAJA does not authorize the Court to award attorneys fees to Social Security claimants in Turner's shoes. If Congress wishes to provide attorney's fees to Social Security claimants who merely secure a remand from a federal court but do not receive benefits it is free to amend the EAJA or enact different legislation that clearly does so. And writing such a statute would not be difficult. Congress has enacted several fee-shifting statutes, like 42 U.S.C. § 1988, that award a prevailing party a "reasonable attorney's fee" without any requirement that the litigant incur any fees in the first place. A provision that would entitle Turner to a fee award could simply read: "A court shall award to a Social Security claimant who challenges the Commissioner's denial of benefits in federal court and prevails a reasonable attorney's fee, unless the court finds that the Commissioner's position in the litigation was substantially justified or that special circumstances make an award unjust." Or better yet, Congress could make the fee and expenses directly payable to the attorney. But whatever statute

Congress chooses to write, if it wishes to waive the United States's sovereign immunity, it must not mince words. The statute must be clear and unequivocal. If such a statute were before the Court in this case, the Court would gladly award fees to Turner or his attorney. But that hypothetical statute is not before the Court, the EAJA is. And the EAJA does not clearly entitle Turner to attorney's fees.

Even if Congress does not act, attorneys representing Social Security claimants in federal court can draft contracts that will satisfy the EAJA's current requirements and entitle a claimant to a fee award even if the court just remands. Recall that the court may only award EAJA fees if the litigant has "incurred" attorney's fees, meaning he has paid them out-of-pocket or has a current legal obligation to pay. The key, therefore, is to draft a contract that triggers the claimant's obligation to pay upon a remand. A clause like this would do the trick: "I promise to pay my attorney a fee equal to $125 per hour in the event that the court remands my case to the Social Security Agency without awarding me benefits and the court determines that the position of the Commissioner was not substantially justified." This provision would be an alternative to the standard 25% fee that the attorney would collect if the court actually awards benefits. Under the terms of a contract that includes such a clause, the two conditions that would entitle a claimant to an EAJA award—the remand, which makes him a prevailing party, and the court determining that the Commissioner's position was not substantially justified—also trigger the claimant's contingent obligation to pay his attorney. The claimant would then be under a legal obligation to pay his attorney a fee at the time the court remands his case to the agency. As such, he would have "incurred" a fee within the meaning of the EAJA, and the court could award him

fees under the statute.

But this contract solution is not necessarily perfect. It is a quick-fix meant to cram the square peg of Social Security litigation into the round hole of the EAJA. And the Court recognizes that it could be risky. After all, the Supreme Court has said that § 406(b) of the Social Security Act "governs the total fee a claimant's attorney may receive for court representation; any endeavor by the claimant's attorney to gain more than that fee, or to charge the claimant a noncontingent fee, is a *criminal offense*." *Gisbrecht*, 535 U.S. at 806 (emphasis added). The fee arrangement that the Court contemplates would, of course, be contingent. But it would be contingent on a remand, not on an award of benefits. The Supreme Court's statement in *Gisbrecht* could be read to say that § 406(b) makes it a crime for an attorney to charge a claimant any fee other than one that is contingent on an award of benefits—in other words, if the claimant does not receive benefits, it is a crime for the attorney to collect anything.

The Court does not believe that this interpretation of § 406(b) is correct. The Supreme Court's statement in *Gisbrecht* is dicta—it served as background information and was not material to the Court's holding that § 406(b) "does not displace contingent fee agreements within the statutory ceiling" with a "reasonable fee" lodestar calculation. *Id.* at 808-09. Also, it appears that the High Court borrowed this interpretation from the Commissioner's brief and statements during oral argument. *Id.* at 795. In no sense was the statement part of, or even substantially related to, the Court's holding in the case.

The best reading of § 406(b) is that the criminal prohibition only comes into effect when the court awards the claimant past-due benefits and then awards the claimant's attorney a

reasonable fee that does not exceed 25% of those benefits.  Under § 406(b)(2), it is a crime for an attorney to charge, demand, receive, or collect "any amount in excess of that *allowed by the court.*"  42 U.S.C. § 406(b)(2) (emphasis added).  If the court does not award benefits and hence does not allow the attorney a fee, the best reading of § 406(b)(2) is that the criminal prohibition does not yet apply.  Indeed, dicta from another section of the Supreme Court's opinion in *Gisbrecht* confirms this interpretation:  "The prescriptions set out in §§ 406(a) and (b) establish the exclusive regime for obtaining fees for *successful* representation of Social Security benefits claimants.  Collecting or even demanding from the client anything more than the *authorized* allocation of past-due benefits is a criminal offense."  535 U.S. at 795-96 (emphasis added).  The Fifth Circuit concurs.  *See Rice*, 609 F.3d at 835-36 ("[W]hen a court *grants contingency fees* under § 406(b) for a successful judicial challenge, it is a crime for an attorney to charge, demand, receive, or collect . . . any amount in excess of that allowed by the court.") (emphasis added) (internal citation and quotations omitted).

Therefore, the most straightforward reading of § 406(b) is that, once the court awards benefits and allows the attorney a reasonable fee, it is a crime for the attorney to charge, demand, receive, or collect anything else.  But if the court has not yet awarded benefits, and therefore has not yet allowed the attorney a fee—on a remand, for example—the criminal prohibition does not apply.  Indeed, the rule of lenity likely compels this straightforward interpretation.  *See United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.").  Under this reading of § 406(b), which the Court believes to be the most appropriate, the contractual provision suggested

by the Court would not be a crime. Of course, the Court recognizes that the dicta in *Gisbrecht* might give some attorneys pause before they draft contracts as the Court has suggested. For this reason, the better course is for Congress to fix the EAJA so that the statute clearly and unequivocally awards attorneys fees to claimants (or, even better, their attorneys) who secure a remand, but no benefits, from the district court.

Unfortunately for Turner, neither of these two possible fixes are of any assistance to him. Congress has not acted. And Turner's contract does not contain any provision that obligates him to pay his attorney for securing only a remand from this Court. Hoping to find such a provision, the Court examined the two fee agreements that Turner filed into the record. But the search was in vain. Turner's 2006 agreement with his attorney provides:

> I agree to pay HON. WOLODYMYR CYBRIWSKY a sum equal to either twenty-five (25) percent of past-due benefits awarded to me and my family in the event the case is won or remunerate him for his time expended at the rate of no less than $150.00 per billable hour for administrative level work and a base of $250.00 per billable hour in federal appeals. No attorney fee will be charged if we do not win the case. R. 28, Ex. 1 (emphasis in original).

Turner's 2008 fee agreement is identical, except that it increases the hourly rates to $200.00 per hour for administrative level work and $325.00 per hour for work in federal court. R. 28, Ex. 2. This fee agreement does not obligate Turner to pay his attorney anything if the court remands his case to the agency without awarding benefits. Although there is an alternative hourly rate, the agreement is clear that "[n]o attorney fee will be charged if we do not *win* the case." R. 28, Ex. 1 (emphasis added). And "win" as used in the agreement clearly means an award of benefits, not a simple remand. The agreement obligates Turner to pay a fee equal to 25% of the

past-due benefits awarded to him "in the event the case is *won*." *Id*. (emphasis added).

Therefore, the agreement clearly contemplates that Turner's case is "won" only if he receives an

award of benefits. This definition of "won" accords with the reasonable understanding that any

Social Security claimant would attach to the term. Thus, under Turner's agreement, the

alternative hourly-rate fee has not been triggered because Turner has not yet "won" his case.

Therefore, Turner is under no current legal obligation to pay his attorney anything, and he has not

"incurred" fees within the meaning of the EAJA.

## CONCLUSION

For the foregoing reasons, the Court hereby **VACATES** its previous order, R. 26, and

**ORDERS** that the plaintiff's motion for  attorney's fees pursuant to the EAJA, R. 21, is

**DENIED**.

This the 14th day of September, 2010.



Signed By:

*Amul R. Thapar*  AT

**United States District Judge**