UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOHN C. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-391 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) | **& ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Of all the canons of statutory construction, one of the most well established is the rule that waivers of sovereign immunity must be strictly construed. "[T]he United States, as sovereign, is immune from suit[.]" *United States v. Testan*, 424 U.S. 392, 399 (1976). If Congress decides to depart from this "background of complete immunity," *United States v. Shaw*, 309 U.S. 495, 502 (1940), and subject taxpayer funds to the expense of legal liability, the conditions and limitations of that waiver "must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981). "It is not [the courts'] right to extend the waiver of sovereign immunity more broadly" than Congress has specifically decreed. *Shaw*, 309 U.S. at 502.

Applying this clear rule, the Court previously denied the plaintiff, John Turner's, motion for fees under the Equal Access to Justice Act ("EAJA"). R. 42. As the Court explained in detail, Turner was only entitled to an EAJA award for attorney's fees that he had "incurred." 28 U.S.C. § 2412(d)(1)(A). Under his contingency fee agreement with his attorney, Turner did not

have to pay a dime unless and until he was awarded benefits. Because the Court simply remanded his case to the Commissioner without awarding benefits, Turner was under no legal obligation to pay his attorney anything when he submitted his motion. Strictly construing the EAJA, the Court determined that Turner therefore had not "incurred" any fees and was not entitled to an award. *Id.* After the Court denied his motion to alter or amend its Order under Rule 59, R. 50, Turner filed a notice of appeal, R. 51.

Turner has now filed a motion under Rule 60(b) asking the Court to vacate its prior Order and award him fees. Turner requests that the Court revise its ruling in light of *Murkeldove v. Astrue*, --- F.3d ---, Nos. 09-10902, 09-11093, 2011 WL 873544, at *10 (5th Cir. March 15, 2011), in which the Fifth Circuit held that Social Security claimants in Turner's shoes—who secure a remand from the district court but have a contingent obligation to pay their lawyer a fee only if they are ultimately awarded benefits—have "incurred" attorney's fees within the meaning of the EAJA. Because Turner filed a notice of appeal on December 30, 2010, R. 51, thereby vesting jurisdiction in the Sixth Circuit Court of Appeals, this Court lacks the authority to grant his Rule 60(b) motion. *Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008). Nevertheless, the Sixth Circuit has crafted a procedure for litigants wishing to seek relief under Rule 60(b) while their cases are pending on appeal. *See First Nat'l Bank of Salem v. Hirsch*, 535 F.2d 343, 346 (6th Cir. 1976). The litigant must file his Rule 60(b) motion with the district court. If the district court is "disposed to grant the motion," it "may enter an order so indicating" and the litigant may then file a motion asking the court of appeals to remand his case back to the district court. *Id.*

"Otherwise, the appeal will be considered in regular course." *Id.* For the following reasons, the Court is not disposed to grant Turner's motion.

Rule 60(b) allows district courts to set aside final judgments because of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Sixth Circuit has recognized that "mistake" may encompass legal errors made by the Court. *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983). After reviewing the Fifth Circuit's decision in *Murkeldove*, however, the Court remains convinced that its legal analysis in denying Turner's EAJA application was correct. The Fifth Circuit's decision is not binding on this Court—it is merely "persuasive authority." *United States v. Simmons*, 587 F.3d 348, 383 (6th Cir. 2009). With all due respect, the Court is not persuaded. The Fifth Circuit's analysis is misguided and fails to faithfully apply the rule that statutory waivers of sovereign immunity must be strictly construed.

The Fifth Circuit first claimed its conclusion was simply a straightforward application of its precedents, which recognized that "a party can incur fees as contemplated by the EAJA for work done pursuant to a contingency-fee agreement." *Murkeldove*, 2011 WL 873544, at *6. This conclusion, unobjectionable on its face, flowed from that court's prior decision in *United States v. Claro*, 579 F.3d 452 (5th Cir. 2009). But *Claro*, and the cases it relied upon, are very different from the situation presented in *Murkeldove*. Those cases all involved litigants whose contingent obligation to pay their attorneys had already been triggered. *Claro* involved an application for attorney's fees under the Hyde Amendment—which incorporates the EAJA's "incurred" requirement—for the costs of defending against a vexatious prosecution. *Id.* at 456-57. The claimant hired a law firm to pursue those fees on a contingent basis—the law firm was

to receive forty percent of any fee award it recovered. *Id.* at 455. The district court awarded the claimant fees and the issue on appeal was whether he could also recoup the forty-percent contingent fee that he paid the law firm pursuing his Hyde Amendment claim. *Id*. at 456. The Fifth Circuit held that he could, subject to a reasonableness limitation, recognizing that "contingent-fee agreements are allowed under the Hyde Amendment." *Id*. at 462. There is nothing controversial about that conclusion. Of course litigants can incur attorney's fees under contingency fee agreements, just as they can under hourly fee agreements. But the critical feature of *Claro* and the cases on which it relied—a feature that was missing in the facts of *Murkeldove* itself—was that the litigants' contingent obligation to pay their attorneys *had already been triggered*. *See id*. at 458-61 (citing *TGS Int'l, Inc. v. United States*, 983 F.2d 229, 229 (Fed. Cir. 1993) (plaintiff had already received judgment in contract action); *Estate of Lee v. FEMA*, 812 F.2d 253, 255 (5th Cir. 1987) (plaintiff had already received judgment in insurance coverage action); *Marre v. United States*, 38 F.3d 823, 825 (5th Cir. 1994) (plaintiff had already received judgment in wrongful disclosure action)). Those litigants had already received monetary judgments in their favor and thus owed their attorneys money. In contrast, the Social Security claimants before the court in *Murkeldove*, like Turner, did not owe their attorneys a dime when they filed their EAJA applications. The contingency that would have triggered their obligations to pay—an award of benefits—had not yet occurred.

Perhaps sensing that this critical distinction made simply stretching *Claro* to cover *Murkeldove* unsatisfactory, the Fifth Circuit went on to explain that "[e]ven if [the claimants] did not have a legal obligation to pay fees pursuant to [their] agreements"—they clearly did

not—"well-established rules of statutory construction and policy considerations dictate that they should be awarded attorney's fees." *Murkeldove*, 2011 WL 873544, at *7. Conspicuously absent from the "well-established rules of statutory construction" that the court proceeded to apply was the rule that statutory waivers of sovereign immunity must be strictly construed. The court gave lip-service to the rule with a single sentence: "We recognize that the EAJA must be strictly construed in the Government's favor." *Id.* at * 7. But in the very next sentence the court did a one-eighty, invoking the rule that "courts should enforce statutory language *unless* the 'disposition required by the text is [] absurd.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000)). And in the next sentence after that, the court said that its "analysis in *Claro* mandates that [it] take policy into account when interpreting the EAJA." *Id.* Then it was off to the races. The court used policy-based interpretation and the absurdity doctrine to arrive at a counter-textual result, never mentioning the strict-construction canon again. The court recognized that denying fees to claimants whose contingent obligation to pay their attorneys had not yet been triggered would severely limit the number of Social Security claimants who could receive EAJA awards. "[A]s a practical matter," only the five percent of claimants to whom federal courts award benefits would be eligible; the forty-five percent whose cases are remanded to the agency would be left out in the cold. *Id*. at *7-8. This result was unacceptable to the Fifth Circuit because it would "frustrate[] the purpose . . . of the EAJA," which the court saw as "eliminat[ing] for the average person the financial disincentive to challenge unreasonable government actions." *Id.* at *8. Therefore, feeling itself "authorized to deviate from the literal language of" the EAJA because enforcing the "plain language . . .

would defeat the intent of Congress," *id.* (quoting *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008)), the court awarded the claimants EAJA fees.

The legitimacy of this mode of reasoning—using general purposes to trump statutory text—has long been an object of debate among judges. *Compare Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the *specific* issue under consideration.") *with Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers."). And that debate has provided ample fodder for the academy, as professors from Boston to Berkeley have explored the relative merits and demerits of text-bound versus purpose-driven interpretation. *See, e.g.*, John Manning, *What Divides Textualists from Purposivists*, 106 Colum. L. Rev. 70 (2006); Caleb Nelson, *What is Textualism?*, 91 Va. L. Rev. 347 (2005); William N. Eskridge, *The New Textualism*, 37 U.C.L.A. L. Rev. 621 (1990); T. Alexander Aleinikoff, *Updating Statutory Interpretation*, 87 Mich. L. Rev. 20 (1988). But whatever the wisdom of elevating purpose over text when interpreting the run-of-the-mill statute, there is one kind of enactment for which it is strictly verboten—waivers of sovereign immunity.

As a waiver of sovereign immunity, the EAJA must be strictly construed. *See Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991). The reasons for this rule are plain. Sovereign immunity is "imbedded in our legal philosophy," and serves the interests "of dignity and decorum, [] of practical administration, [and] of the political desirability of an impregnable legal citadel where

government . . . may operate undisturbed by the demands of litigants." *Shaw*, 309 U.S. at 501. Waiving this immunity is an extraordinary act because it represents the "eliminat[ion]" of an "important constitutional protection[]" for the government. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 546 (1992) (Scalia, J.). To be absolutely sure that the waiver extends no further than intended, the Supreme Court has long emphasized that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) ("Waivers of immunity must . . . not [be] enlarged beyond what the language requires[.]") (internal quotation marks omitted).

By its terms, the EAJA limits reimbursements to claimants who have "incurred" attorney's fees. 28 U.S.C. § 2412(d)(1)(A). Saying that a claimant who has an untriggered contingent liability to pay his attorney has "incurred" fees is not a natural use of the term. Has a homeowner whose house is on the market "incurred" his real estate agent's fee before the house has sold? Has a gambler at the roulette table who bet $1,000 on black "incurred" a loss before the ball rolls? In these situations, like with Social Security claimants who have not yet been awarded benefits, the event that will cause the person to owe or lose his money may or may not occur. The homeowner may or may not sell his house. The roulette ball may or may not land on red. And the Social Security claimant may or may not receive benefits on remand. It is, at best, awkward to say that these individuals have "incurred" any expenses before the triggering event has come to pass. But even if it is somewhat ambiguous whether "incurred" can include an untriggered contingent liability, the strict construction canon mandates that

ambiguities must be construed "in favor of immunity." *United States v. Williams*, 514 U.S. 527, 531 (1995).

The Fifth Circuit sidestepped this difficulty by invoking what it saw as the EAJA's broad statutory purposes to interpret (although "trump" is probably more accurate) the "incurred" requirement. That is contrary to the strict-construction canon. The Fifth Circuit's reasoning is rather like the following: Mom and dad give their college-bound student their credit card and permission to buy a bedspread, pillows, and a bathrobe. Reasoning that her parents' general purpose is for her to have a comfortable dorm room, the student also buys a stereo, a television, and a new wardrobe. The parents, understandably, were probably quite upset. Whatever might have been their general purpose when they gave their daughter their credit card, they limited her to buying the specific items on the approved list. Similarly, whatever might have been Congress's overriding purpose when it waived the United States' sovereign immunity in the EAJA, it only opened up the federal treasury to litigants who strictly comply with the Act's terms, including the requirement that attorney's fees must be "incurred." The strict-construction canon ensures that courts heed these limits.

Under the Fifth Circuit's reasoning, *any* limitation that the EAJA places on the award of fees could be thrown out the window because all such limitations "restrict[] rather than expand[] access to courts." *Murkeldove*, 2011 WL 873544, at *9. That is not the way that courts should interpret any statute, much less a waiver of sovereign immunity. As the Supreme Court has admonished, "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of

legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987).

The Fifth Circuit also invoked some version of the absurdity doctrine to support its interpretation of the EAJA. *Murkeldove*, 2011 WL 873544, at *7. Although its validity has been routinely questioned, *see* John Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387 (2003), courts have long kept the absurdity doctrine in their back pockets to allow them to depart from the plain language of a statute if that language produces manifestly unjust or absurd results. But the bar for applying the absurdity doctrine has always been high. As Chief Justice Marshall wrote in *Sturges v. Crowninshield*, 17 U.S. 122, 203 (1819), courts may only depart from the plain text of a statute if "the absurdity and injustice of applying [it] to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application." Prototypical applications of the absurdity doctrine include refusing to apply a law criminalizing "dr[awing] blood in the streets" to a doctor who performs emergency surgery on a fallen pedestrian; refusing to apply a law that makes escaping from prison a felony to a prisoner who ran from a prison that was on fire; and refusing to apply a statute that punishes obstructing the passage of the mail to a county sheriff who arrested a mail carrier charged with murder. *See United States v. Kirby*, 74 U.S. 482, 487 (1868). In contrast to these extreme examples, denying EAJA fees to Social Security claimants with untriggered contingent obligations to pay fees to their attorneys—*i.e.*, who do not owe their attorneys a dime—is probably not a result "that all mankind would, without hesitation, unite in rejecting." *Sturges*, 17 U.S. at 203. Especially in

an age of soaring budget deficits—when wrangling over spending cuts brings the federal government to the brink of shutting down—limiting the United States' obligation to pay attorney's fees only to those who incur them is hardly absurd.

Indeed, as this Court previously recognized, it is the Fifth Circuit's approach that produces the stranger result. Because the government must pay EAJA awards directly to the claimant, not his attorney, claimants who are not awarded benefits on remand, and who thus have no obligation to pay their attorneys anything, may simply get to pocket the EAJA award. *See* R. 24 at 27-30. More than 2,200 claimants could pocket this unjustified windfall in a given year. *Id*. at 25. In making this point, the Court was not invoking the absurdity doctrine to buttress its own conclusion. Rather, the Court was merely pointing out that straying from the plain meaning of text would produce absurd results, thereby reinforcing the primacy of the text itself. That is very different from the Fifth Circuit's approach—relying on a contrived "absurdity" to depart from the statute's plain meaning. Undoubtedly, the Fifth Circuit's decision was significantly motivated by the negative consequences that enforcing the "incurred" requirement would have on social security claimants' access to courts. This Court also recognized these troubling results. R. 42 at 27-30. But "'[w]hatever temptations the statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533 (1947)). Fixing the statutory scheme is a job for Congress, not the courts.

Because the Fifth Circuit utilized broad statutory purposes and the absurdity doctrine to construe the EAJA in a manner that was anything but strict, its analysis in *Murkeldove* has not persuaded the Court that its prior Order denying Turner's application for EAJA fees was in error. Accordingly, it is **ORDERED** that Turner's Rule 60(b) motion, R. 52, is **DENIED**.

This the 13th day of April, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge